# THE CITY OF CHICAGO

### v.

## LORIN C. COLLINS, Jr. et al.

*Opinion filed October 24, 1898.*

1. INJUNCTION—*equity may enjoin enforcement of illegal city ordinance to avoid a multiplicity of suits.* A court of equity may, in order to prevent a multiplicity of suits, enjoin the enforcement of an illegal city ordinance at the instance of any person whose interests are impaired thereby, where it appears that the rights of many persons are affected by the ordinance in the same manner.

2. SAME—*equity may enjoin proposed breach of public trust by city.* A city is charged with a public trust, and where it is about to commit an act clearly illegal, the necessary effect of which is to impose heavy burdens upon the property of many citizens and tax-payers, it is amenable to the jurisdiction of a court of equity for a breach of trust, and that court may interfere by injunction.

3. MUNICIPAL CORPORATIONS—*city cannot impose license fee on use of streets by public.* A city holds its streets in trust for the public for purposes of travel, and, such use by the public being a matter of right, the city cannot exact a license fee therefor.

4. SAME—*Chicago "Wheel Tax" ordinance is illegal.* The Chicago "Wheel Tax" ordinance is illegal in exacting a license fee from all owners of wheeled vehicles which are used for private purposes exclusively, as a means of locomotion over the public streets of the city.

5. SAME—*Chicago "Wheel Tax" ordinance creates a double tax.* The Chicago "Wheel Tax" ordinance, by providing that the revenue derived from the license fees imposed thereby on vehicles shall be expended in improving the public streets according to a certain method of distribution among the several wards of the city, creates a double tax, which renders it invalid, the same vehicles being taxed for general purposes, at their value, as personal property.

APPEAL from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

The appellees, three hundred and seventy-three in number, residents and tax-payers of the city of Chicago, suing in behalf of themselves and all others similarly situated, filed a bill to enjoin the city from enforcing an ordinance providing that all vehicles used upon the streets of the city, including those for private use, for

pleasure, etc., should pay an annual license fee, and that any person using any vehicle without first having obtained a license therefor, or failing to have said vehicle properly tagged so that it would appear the license had been paid, should, on conviction, be fined a sum of not less than $10 nor more than $50 for each offense. The ordinance requires wagons, carriages, coaches, buggies, bicycles, and all other wheeled vehicles propelled by horse power or by the rider, shall be so licensed. The ordinance also provides that all money received under or collected from the operation and enforcement of the ordinance should constitute a separate and distinct fund, to be known as the "Wheel Tax Fund." The sole object and purpose for which said wheel tax fund might be disbursed should be for repairing and keeping in good condition the streets of the city, and should, upon the recommendation of the council, be distributed in the thirty-four wards of the city of Chicago.

At the time of the filing of the bill this ordinance was in full force and effect. It will be seen from an examination of such ordinance that it imposes a license fee or tax on all vehicles used on the streets of Chicago,—even those in private use and not for let or hire. All of the appellees are owners of bicycles, and many of them of other wheeled vehicles propelled by horses. Three hundred thousand bicycles and carriages in private use only are affected by the ordinance. The appellees use their bicycles, not for the purpose of traffic or for carrying merchandise or passengers for hire upon the streets of Chicago, but solely for their private use and as a means of locomotion from place to place, not letting or hiring either said bicycles or wheeled vehicles to any person or persons whomsoever, and three hundred thousand other vehicles in the city of Chicago, all of which are subjected to the license tax imposed by the ordinance, are similarly used. All the personal property of the appellees owned by them on May 1, 1897, subject to taxation, has been

listed and assessed for taxation, and, inasmuch as the law is uniform, it is reasonable to conclude that all other personal property, including the three hundred thousand other vehicles affected by the ordinance, has been similarly listed and assessed.

The fiscal year of the city of Chicago commenced on January 1, 1897, and long prior to the enactment of the ordinance in question the city of Chicago had passed the annual appropriation bill provided for by section 2 of article 7 of the general act relative to cities and villages, providing that within the first quarter of the fiscal year such appropriation bill shall be passed, by which the corporate authorities may appropriate such sum or sums of money as may be deemed necessary to defray all necessary expenses and liabilities of such corporation, and in such ordinance shall specify the objects and purposes for which such appropriations are made and the amount appropriated for each object; and no further appropriation shall be made at any time within such fiscal year without the sanction of the majority of the legal voters of the municipality.

The bicycles owned by the appellees range in value from $5 to $1500, and the value of the other wheeled vehicles from $25 to $5000, and it is not denied by the answer that every day the appellees use one or more of their vehicles, and that, inasmuch as they are confined, during the working hours of the day, very closely to their places of business, it is needful for their health and mental and bodily vigor that they take exercise in the streets, boulevards and parks of the city; that many thousands of people in the city of Chicago are similarly situated, and that unless they submit to the exaction of the illegal ordinance they will be debarred of the privilege of so using the streets, and will be greatly injured in their physical health and enjoyment.

It is contended that the ordinance is void because the city has no power to require a license for private vehicles

used on the streets of the city, nor to impose a tax by way of license; that a tax so imposed on vehicles, on account of their different values, would not be uniform; that great injury would result because of injury to health and because of interference with the right of complainants to use the streets, and consequent injury to business by the prevention of free locomotion from place to place, and by the citizens being harassed by arrests, etc. The bill prayed for an injunction perpetually enjoining the enforcement of the ordinance.

The answer averred the right to enact and enforce the ordinance, and asserted complainants had a remedy at law, if any existed. The cause was heard on a stipulation as to facts which embraced the facts as averred in complainants' bill. The stipulation showed the streets at night are full of passing vehicles; that the bicycle is almost noiseless, and chances of accident to persons using the streets have greatly increased because of its use; that the city has been obliged to enact rules regulating the use of the streets because of the changed conditions; that prior to the passage of this ordinance the city was obliged to impose rules requiring bicycles to carry lights after dark, limiting their speed, regulating the meeting and passing of other vehicles and persons, and otherwise regulating the use of the streets; that many vehicles, especially those used for pleasure, are now fitted with rubber tires and move with but slight noise, so that persons using the streets have little warning of their approach.

CHARLES S. THORNTON, Corporation Counsel, GRANVILLE W. BROWNING, and CORA B. HIRTZEL, for appellant:

The court of equity had no jurisdiction over the subject matter of the bill of complaint. 2 Beach on Injunctions, sec. 1290; *Railroad Co.* v. *Mayor*, 54 N. Y. 159; *Stock Exchange* v. *McClaughry*, 148 Ill. 372; *Hosiery Co.* v. *Arnold*, 143 N. Y. 265; *Eldredge* v. *Hill*, 2 Johns. Ch. 281; *Youngblood* v. *Sexton*, 32 Mich. 406; *Scott* v. *Donald*, 165 U. S. 107; *West*

v. *Mayor*, 10 Paige, 539; *Ewing* v. *Webster*, 72 N. W. Rep. 511; *Railroad Co.* v. *Ottawa*, 148 Ill. 397; *Poyer* v. *DesPlaines*, 123 id. 111; *Yates* v. *Batavia*, 79 id. 500; *Gartside* v. *East St. Louis*, 43 id. 47; *Skakel* v. *Roche*, 27 Ill. App. 423; *Chicago* v. *Ferris Wheel Co.* 60 id. 384; High on Injunctions, sec. 1244; *Shelton* v. *Platt*, 139 U. S. 591; *Tribette* v. *Railroad Co.* 70 Miss. 182; *Downs* v. *Chicago*, 11 Wall. 108; *Commonwealth* v. *Plaisted*, 148 Mass. 375; *Welch* v. *Hotchkiss*, 39 Conn. 140; *Tomlinson* v. *Indianapolis*, 144 Ind. 142.

The fee imposed by the ordinance in question is not a tax, and may legally be greater than the expense of regulation. *Kinsley* v. *Chicago*, 124 Ill. 359; *Wiggins Ferry Co.* v. *East St. Louis*, 107 U. S. 373; 68 Ill. 372; Cooley on Taxation, 599; *Ex parte Gregory*, 1 Tex. App. 753; *Warehouse License cases*, 94 U. S. 147.

The legislature had power to delegate to the city authority to enact the ordinance. Cooley's Const. Lim. 734; *Joyce* v. *East St. Louis*, 77 Ill. 156; *Gartside* v. *East St. Louis*, 43 id. 47; Const. sec. 1, art. 9; *Cate* v. *State*, 3 Sneed, 120.

The ordinance is a valid exercise of the police power of the city. Starr & Curtis' Stat. chap. 24, clauses 66, 78, 96, par. 63; *Deems* v. *Mayor*, 30 Atl. Rep. 648; *Braun* v. *Chicago*, 110 Ill. 195; *State* v. *Camp Sing*, 44 Pa. 516; *Thorpe* v. *Railroad Co.* 27 Vt. 150; Cooley on Taxation, 600; *Townsend* v. *State*, 47 N. E. Rep. 19; 13 Am. & Eng. Ency. of Law, 505, note 1; *Robertson* v. *Commonwealth*, 40 S. W. Rep. 920; Horr & Bemis on Mun. Ordinances, 30; *Slaughter-house cases*, 16 Wall. 127; *Butchers' Union Co.* v. *Crescent City*, 111 U. S. 758.

The ordinance is not void, because it designates a use for the surplus of the license fund. Cooley on Taxation, 597; *Banta* v. *Chicago*, 172 Ill. 204; *Ex parte Gregory*, 20 Tex. App. 210.

The use of the surplus fund for "repairing and keeping in good condition" the streets of the city is lawful. *Gartside* v. *East St. Louis*, 43 Ill. 47; *Rochester* v. *Upman*, 19 Minn. 108; *State* v. *Cassiday*, 22 id. 321; *Marmett* v. *State*, 45 Ohio St. 63; *Cincinnati* v. *Bryson*, 15 Ohio, 625; *Harmon* v.

*Chicago,* 140 Ill. 374; Starr & Curtis' Stat. chap. 24, par. 117; *Kuehner* v. *Freeport,* 143 Ill. 92; *Falch* v. *People,* 99 id. 137; Tiedeman on Lim. of Police Power, sec. 129*a,* p. 479.

COLLINS & FLETCHER, for appellees:

The circuit court had jurisdiction. Pomeroy's Eq. Jur. (2d ed.) secs. 243, 245; *Desplaines* v. *Poyer,* 123 Ill. 117; *Cowper* v. *Clerk,* 3 P. Wms. 155; Beach on Modern Eq. Jur. sec. 292; *Alwood* v. *Cowen,* 111 Ill. 481; *Baldwin* v. *Shine,* 84 Ky. 510; *Chicago* v. *Ferris Wheel Co.* 60 Ill. App. 384; *Davis* v. *Fasig,* 128 Ind. 271; *United States* v. *Telegraph Co.* 160 U. S. 51; *Mayor* v. *Radecke,* 49 Md. 217; *Rushville* v. *Natural Gas Co.* 132 Ind. 575; *Livingston* v. *Paducah,* 80 Ky. 657; *Covington* v. *Wood,* 98 id. 344; *Deems* v. *Mayor,* 80 Md. 164; *Wood* v. *Brooklyn,* 14 Barb. 425; *Sylvester Coal Co.* v. *St. Louis,* 130 Mo. 323; Beach on Injunctions, sec. 1290; *Klee* v. *Sanders,* 74 Mich. 692; High on Injunctions, secs. 1236, 1243, 1247.

Even if the ordinance imposed a license, and not a tax, as claimed by appellant, it is invalid because unwarranted by the statute. 13 Am. & Eng. Ency. of Law, 530; 4 id. 31; *Cairo* v. *Bross,* 101 Ill. 478; *Emmons* v. *Lewiston,* 132 id. 478; *St. Louis* v. *Telephone Co.* 96 Mo. 627; *Farwell* v. *Chicago,* 71 Ill. 269; *Twining* v. *Elgin,* 38 Ill. App. 356; *Chicago* v. *Insurance Co.* 126 Ill. 276; *Joyce* v. *East St. Louis,* 77 id. 156; *Burlington* v. *Baumgardner,* 42 Iowa, 674; *Covington* v. *Woods,* 98 Ky. 344; Kentucky Stat. sec. 3094; *Livingston* v. *Paducah,* 80 Ky. 657; *Brooklyn* v. *Nodine,* 26 Hun, 512; *Millerstown* v. *Bell,* 123 Pa. 151; *Mt. Olive Borough* v. *Hazelhart,* 26 Pitts. L. J. 400; 1 Pepper & Lewis' Dig. Pa. Stat. p. 489, sec. 93; *Reading* v. *Bitting,* 167 Pa. St. 21; *Davis* v. *Petrinovitch,* 112 Ala. 654; *St. Louis* v. *Grone,* 46 Mo. 574; *New Orleans* v. *Telegraph Co.* 30 La. Ann. 41.

The ordinance is void because unreasonable and oppressive and violative of constitutional rights. Dillon on Mun. Corp. (4th ed.) sec. 319; 4 Am. & Eng. Ency. of Law, (2d ed.) note 4, p. 31, and p. 1002; 17 id. p. 253; 18 id. p. 740; U. S. Const. Amendments, arts. 5, 14; *Farwell* v. *Chi-*

*cago,* 71 Ill. 273; Ill. Const. art. 2, sec. 2; *St. Louis* v. *Grone,* 46 Mo. 574; *Davis* v. *Petrinovitch,* 112 Ala. 654.

The ordinance is a tax, and is invalid because it is not uniform and constitutes double taxation.   Hurd's Stat. chap. 24, secs. 88, 89, 90; *Smith* v. *McDowell,* 148 Ill. App. 63; Tiedeman on Lim. of Police Powers, sec. 381; Cooley on Taxation, sec. 596; Elliott on Roads and Streets, 69; Angell on Highways, sec. 2; 4 Am. & Eng. Ency. of Law, (2d ed.) 31; Ill. Const. art. 10, secs. 1, 9; *Johnston* v. *Macon,* 67 Ga. 352; *Livingston* v. *Paducah,* 80 Ky. 657.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

Two questions are presented by this record:   Has a court of equity jurisdiction to enjoin the enforcement of an ordinance of a city; and has the city, under the express or implied powers conferred on it by the legislature, authority to adopt this ordinance.

The enforcement of a void city ordinance may be enjoined in order to prevent a multiplicity of suits, at the instance of any person whose interests are impaired by it. A court of equity, however, cannot determine whether the ordinance has been violated, but merely whether it is void.   Where such court is resorted to on the ground of prevention of a multiplicity of suits, there must be a right affecting many persons. (*Poyer* v. *Village of DesPlaines,* 123 Ill. 111; *Chicago, Burlington and Quincy Railroad Co.* v. *City of Ottawa,* 148 id. 397.)   Pomeroy, in his work on Equity Jurisprudence, (sec. 245,) in treating of the jurisdiction of courts of equity on that ground, divides them into four classes, and in the third and fourth classes states the principle:   "*Third,* where a number of persons have separate and individual claims and rights of action against the same party, A, but all arise from some common cause, are governed by the same legal rule and involve similar facts, and the whole matter might be settled in a single suit brought by all these persons uniting as co-plaintiffs,

or one of the persons suing on behalf of the others, or even by one person suing for himself alone. The case of several owners of distinct parcels of land upon which the same illegal assessment or tax has been laid is an example of this class. *Fourth*, where the same party, A, has or claims to have some common right against a number of persons, the establishment of which would regularly require a separate action brought by him against each of these persons or brought by each of them against him, instead thereof he might procure the whole to be determined in one suit brought by himself against all the adverse claimants as co-defendants." It is familiar that on this ground tax-payers of a town, city or county, or other taxing district, may file a bill to restrain or set aside an illegal general tax, whether personal or made a lien upon their respective property. *Allwood* v. *Cowen,* 111 Ill. 481; *Kimball* v. *Merchants' Loan and Trust Co.* 89 id. 611; *Searing* v. *Heavysides,* 106 id. 85.

The claim that the failure of complainants to pay this tax and resort to legal actions to recover the amount precludes equitable interference, cannot be sustained. Many cases undoubtedly exist where equity will interfere to protect an invasion of property rights where the remedy at law is not entirely adequate, and where peculiar difficulties intervene the jurisdiction will be upheld. In the present case three hundred and seventy-three complainants have filed their bill for relief. Their grievance is precisely the same and arises from the same cause. The various parties aggrieved, although not jointly interested, are allowed to sue together for the express purpose of avoiding a multiplicity of suits and to have the controversy settled in one hearing. The municipality is charged with a public trust, and where it is about to commit an act clearly illegal, the necessary effect of which will be to impose heavy burdens upon the property of citizens and tax-payers, it becomes amenable to the jurisdiction of equity for a breach of trust, and such court may interfere by injunction for the preven-

tion of suct act.    Where the controversy is between two
parties only, or where but few persons are involved, then,
unless complainant's rights have been established at law,
a court of equity will not interfere. *Poyer* v. *Village of Des-
Plaines, supra; Chicago, Burlington and Quincy Railroad Co.*
v. *City of Ottawa, supra; Yates* v. *Village of Batavia,* 79 id. 500.

No inflexible rule can be laid down for the determina-
tion of the question as to whether jurisdiction exists in
a court of equity.    In general, an adequate legal remedy
will suffice to make such courts hesitate in acting.    But
inadequacy in granting relief for the determination of
a right may arise from causes other than mere forms of
remedy, and it will not do to sacrifice justice on the mere
ground of the form of the remedy, where convincing facts
show that adequate relief can best be had in the forum of
a court of equity.    In this case three hundred and seventy-
three complainants present facts showing that between
200,000 and 300,000 citizens and tax-payers are affected by
the provisions of the ordinance, and if compelled to pay
the illegal tax, hardship and injustice will result to an
enormous number of persons.    If they pay the tax and
are compelled to resort to a court of law to recover back
the amount so paid, the business of the courts will be ob-
structed by the number of actions of the same character.
Long delay will ensue, and the costs to the persons so
paying such illegal tax or license fee will be greater than
the amount to be recovered.    Under any circumstance, if
the license exacted is illegal it would amount to oppres-
sion and injustice to a large part of the population of the
city of Chicago, and this bill presents a case for the juris-
diction of a court of equity.

The contention of appellant is that the ordinance was
lawfully passed under the powers delegated to the city
by the general Incorporation act, under which it was or-
ganized.    That act, by section 1 of article 5, provides the
common council shall have the following among other
powers: Clause 4: "To fix the amount, terms and man-

ner of issuing and revoking licenses." Clause 7: "To lay out, establish, open, alter, widen, extend, grade, pave or otherwise improve streets, alleys, avenues, sidewalks, wharves, parks, public grounds, and vacate the same." Clause 8: "To plant trees upon the same." Clause 9: "To regulate the use of the same." Clause 10: "To prevent and remove encroachments or obstructions upon the same." Clause 11: "To provide for the lighting of the same." Clause 12: "To provide for the cleansing of the same." Clause 92: "To prevent and regulate the rolling of hoops, playing of ball, flying of kites, or any other amusement or practice having a tendency to annoy persons passing in the streets or on the sidewalks, or to frighten teams or persons." Clause 75: "To declare what shall be a nuisance, and to abate the same, and to impose fines upon parties who may create, continue or suffer nuisances to exist." Clause 78: "To do all acts, make all regulations which may be necessary or expedient for the promotion of health or the suppression of disease." Clause 66: "To regulate the police of the city, and pass and enforce all necessary police ordinances." Clause 96: "To pass all ordinances, rules and make all regulations proper or necessary to carry into effect the powers granted to cities or villages, with such fines or penalties as the city council or board of trustees shall deem proper: *Provided*, no fine or penalty shall exceed $200, and no imprisonment shall exceed six months for one offense."

The principal contention of appellant is, that under clause 9 of section 1 of the act, which grants power to the common council to regulate the use of the streets, the implied power is conferred to require a license to use the streets, as it has been frequently held by this court that, the power to regulate being expressly granted, the power to license as a means of regulation was clearly conferred. *Chicago Packing and Provision Co.* v. *City of Chicago*, 88 Ill. 221; *Kinsley* v. *City of Chicago*, 124 id. 359; *Banta* v. *City of Chicago*, 172 id. 204.

The streets and alleys of a city are held in trust by the municipality for the use of the public, for purposes of travel thereon and as a means of access to and egress from buildings abutting thereon or lots adjacent thereto. The right to travel on and along the streets of a city belongs to the general public, and does not belong to its denizens alone. The right to travel being in the general public everywhere, all persons have a right to pass along and use the streets and alleys of a city in all their parts, the full width and length thereof. The municipality, which is a mere trustee of the public and holds the streets and alleys in trust for that public, cannot deny the right of the public to use the streets and alleys. It cannot assume an exclusive ownership, and deny the rights of the beneficiaries under their trust and arrogate to itself a power greater than that of a mere trustee, and prevent the use of the streets and alleys by individual members of the public. The right of the public to use the streets is the right to use them for purposes of travel in the recognized methods in which the public highways of the State are used. Any method of travel may be adopted by individual members of the public which is an ordinary method of locomotion, or even an extraordinary method, if it is not, of itself, calculated to prevent a reasonably safe use of the street by others. If a right exists in a city council to impose a license fee, by way of tax, on every person using wheeled vehicles thereon, it may in like manner impose such license fee for such use of the streets in every other manner of locomotion or travel, and reach the man on horse-back or the pedestrian walking along the same.

The right conferred on the city council by the legislature to regulate the use of the streets and alleys of the city did not contemplate a power in a trustee of a beneficiary to deprive that beneficiary of a right. The power to provide, by ordinance, for planting trees in streets; to prevent encroachments upon or remove obstructions from the same; to provide for lighting and cleansing them; to

prevent and regulate the rolling of hoops, playing of ball or flying of kites therein, or to prohibit any other amusement having a tendency to annoy persons, is conferred for the purpose of keeping the streets in a condition for public use and travel. Any usual method of travel along the streets and alleys of a city cannot be declared to be a nuisance. The city council may regulate the use of the streets and alleys to the extent that it may require sidewalks exclusively reserved for use by pedestrians, and exclude certain character of loads and regulate the width of tires on vehicles used on a certain character of pavements, and provide that the rate of speed shall be much less on certain streets than on others, and otherwise regulate the use of the streets, having in view solely the welfare and safety of the public. The city may also regulate certain occupations, such as hackmen, draymen, expressmen, and the like, for such regulation is of a police character, having reference to the general welfare, as a means of preventing improper exactions and extortions; and for the same reason, a license may be exacted for vehicles used in the transportation of goods and merchandise, or of passengers, or for other purposes of traffic; but such license is an occupation license, and not one for the use of the streets. The license in the latter named case is designed to operate upon those who hold themselves out as common carriers, and a license may be exacted from such as a proper exercise of police power; but no reason exists why it should be applied to the owners of private vehicles used for their individual use exclusively, in their own business, or for their own pleasure, as a means of locomotion. *Farwell* v. *City of Chicago,* 71 Ill. 269; *Joyce* v. *City of East St. Louis,* 77 id. 156; *City of Collinsville* v. *Cole,* 78 id. 114; *City of St. Louis* v. *Grone,* 46 Mo. 575; *Livingston* v. *City of Paducah,* 80 Ky. 657; *City of Covington* v. *Woods,* 33 S. W. Rep. 84.

Anything which cannot be enjoyed without legal authority would be a mere privilege, which is generally

evidenced by a license. (*Cate* v. *State*, 3 Sneed, 120.) The use of the public streets of a city is not a privilege, but a right. Tiedeman on Limitations of Police Power (sec. 281,) says, in distinguishing between a license and a tax: "It is therefore conclusive that the general requirements of a license for the pursuit of any business that is dangerous to the public can only be justified as an exercise of the power of taxation or the requirement of a compensation for the enjoyment of a privilege or franchise." In Cooley on Taxation (p. 596) it is said: "A license is a privilege granted by the State, usually on payment of a valuable consideration, though it is not essential. To constitute a privilege the grant must confer authority to do something which without the grant would be illegal, for if what is to be done under the license is open to every one without it, the grant would be merely idle and nugatory, conferring no privilege whatever."

A license, therefore, implying a privilege, cannot possibly exist with reference to something which is a right, free and open to all, as is the right of the citizen to ride and drive over the streets of the city without charge and without toll, provided he does so in a reasonable manner. That such a right exists in Chicago is recognized in *Smith* v. *McDowell*, 148 Ill. 51, where it was said relative to the streets of a city (p. 63): "The grant of power in this particular is to be construed in view of the purposes for which the municipality is invested with the control of its streets, alleys and public grounds. The municipality, in respect of its streets, is a trustee for the general public, and holds them for the use to which they are dedicated. The fundamental idea of a street is not only that it is public, but that it is public in all its parts, for free and unobstructed passage thereon by all persons desiring to use it."

Section 6 of the ordinance provides: "All moneys received from or collected from the operation and enforcement of this ordinance shall make a separate and distinct

fund, apart from all other moneys held or collected by the city government of the city of Chicago, and shall be known as the 'Wheel Tax Fund.' The sole use and purpose for which said wheel tax fund may be disbursed or expended shall be for the repair and keeping in good condition of such streets as are under the direction of the city government proper, and shall be expended only as the commissioner of public works shall authorize, in the improvement of such public streets as he may have directed to be placed in proper condition."

It is a fundamental maxim in taxation that the same property shall not be subject to a double tax payable by the same party, either directly or indirectly. It is only when statutes are passed which impose taxes on false or unjust principles, or operate to produce gross inequality, so that they cannot be deemed in any sense proportioned in their effect on those who are to bear the public charges, that courts can interfere and arrest the course of litigation by declaring such enactments void. It appears from the allegations of the bill and the stipulation of facts that the complainants are tax-payers, and were assessed for and paid an *ad valorem* tax equal to that assessed upon other personal property in the city. This ordinance, on its face, indicates that its purpose, in part, is to raise a special fund for the improvement of streets, and provides for the manner of its distribution, and this amounts to a double tax. The exaction imposed is a tax on specific articles of personal property which are required by law to be, and which the bill alleges have been, assessed for general taxation at their value, and upon which taxes have been paid. To tax them again by declaring by ordinance they shall not be used until another tax is paid, levied, as in this ordinance, without regard to values, is not only double taxation, but is a violation of the principle of equality and uniformity, which is indispensable to all legal taxation. It imposes a heavier burden upon one class of tax-payers than is imposed upon others, and is

violative of the principle of equality and uniformity which must underlie all valid taxation. A statute which makes any kind of property the subject of taxation, and, discriminating, imposes upon it a double burden for a single object, makes even approximate equality and uniformity impossible, because it is an arbitrary and radical departure from both.

The authority to impose a tax or to exact a license must clearly appear and must be strictly construed. If there is a doubt as to the right, it must be resolved adversely to it. In this case there is no express power given the city council to impose this license fee, and no implied power arises which gives the right. It has no power to levy a tax in this manner. In any view of the case, the city had no power to adopt this ordinance, and the injunction was properly made perpetual.

The decree of the circuit court of Cook county must be affirmed.                             *Decree affirmed.*