Jones, J.
(dissenting). This case involves much more than a local regulation. As presented, the question is: May a municipal council adopt a police regulation that affects the citizenry and commerce of the entire state? In this instance the little village of Perrysburg claims the right to deny passengers residing in the village the privilege of embarking or disembarking from a motor bus passing through the village, if the bus is one running for hire. If this may be done, every municipality in Ohio may do likewise, and prohibit, not only the carrying of its resident passengers, but also the carrying of freight for hire. In view of the modern growth of this method of transportation throughout the country, if other municipalities were to adopt a similar policy, the consequences of this decision might indeed be appalling, where, as is claimed in this case, the state has not acted. The Court of Appeals denied the right of a municipality to extend its police regulations in such a manner as would, indirectly at least, prohibit the continuous passage of the citizens of Ohio through its municipalities. The highways of the state are peculiarly within its own control.
The minority of this court do not deny the right of a municipality to control the use of its streets, or to license motor busses, where these regulations are reasonable and not arbitrarily adopted; but we do deny the right of a municipality to extend its powers beyond municipal limits, to throttle state *261 functions, or to prohibit the use of the state highways for general commerce.
This is a penal ordinance. One section thereof describes the motor bus as one engaged in carrying passengers for hire to and from the village of Perrysburg. It is made unlawful (1) to use or occupy any street in the village by such motor bus; and (2) “to operate the same by indiscriminately accepting such persons as may offer themselves for transportation along the way or course” on which such bus may be used or running. This clause in itself may be ambiguous, but it is not so under the concession made as to its effect by counsel on both sides. In that respect the Court of Appeals said:
“However, it is stated in argument, and not disputed, that the village is not undertaking to prohibit motor busses from passing through the village, but only prohibits the taking on or discharging of passengers within the village.”
Accepting this construction of the clause in the ordinance, which was substantially conceded in its presentation to this court, we think the clause in the ordinance is void, since it is a discrimination by the village against the interests of its own citizens. Were the Legislature itself to enact a similar provision, denying the right of embarkation or disembarkation to the citizens of one or more of its municipalities, can there be any question that the court would not hold such a statute unconstitutional? Even if it be conceded that the village of Perrysburg is a sovereign in itself, an imperium in imperio, does that endow it with a higher grade of sovereignty than the state? Did the state endeavor this purpose by enacted law, it would be the duty of the *262 court to declare it invalid, because it neither afforded equal protection nor operated uniformly upon the citizens of the state. If it be conceded that the penalty is not visited upon a motor bus merely passing through the municipality, then it must be conceded that the burdens and inconveniences of the ordinance are imposed only on residents of Perrysburg who embark or disembark therefrom. If a municipality may thus indirectly control state commerce by these transportation companies, it must also be conceded that, under the guise of “local police regulation,” it can likewise place similar conditions upon the great public utilities of the state. It is a reversion to the ancient governmental state, which existed within the walled cities in the Middle Ages, when they arrogated to themselves sovereign powers, which they held supreme and uncontrolled by the state to which they otherwise gave feudal allegiance. The control of the state highway still remains in the state under the Constitution of 1852. The amendments to the Constitution of 1912 left that control supreme, and yielded only that portion of control that gave to municipalities the right of local police regulation solely within municipal limits ; it is purposeless here to discuss whether, as to unchartered municipalities, this power was derived from state legislation or from Section 3, Article XVIII, of the 1912 Amendment.
In this connection I can do no better than to refer to the language of Mr. Justice Phillips in the case of Chicago v. Collins, 175 Ill., 445, at pages 455 and 457, 51 N. E., 907, at page 909 (49 L. R. A., 408, 67 Am. St. Rep., 224):
“The right to travel being in the general public everywhere, all persons have a right to pass along *263 and use the streets and alleys of a city in all their parts. * * * The fundamental idea of a street is not only that it is public, but that it is public in all its parts, for free and unobstructed passage thereon by all persons desiring to use it.”
No question arises in this case of the right of the village to license vehicles using the village streets, or to prescribe routes of travel through the municipality. Were these regulations, which are purely local, adopted by the municipal council, this court would no doubt sustain them as coming within the local police power, if the regulations so adopted were reasonable and not arbitrarily unjust.