WILLIAM WILKIE *et al.*

*v.*

THE CITY OF CHICAGO.

*Opinion filed December 20, 1900.*

1. EQUITY—*when equity may entertain suit to restrain enforcement of alleged illegal ordinance.* To avoid a multiplicity of suits and have the controversy settled at one hearing, followers of a particular occupation whose rights and liabilities are identical may join in a suit in equity to restrain the enforcement of an alleged illegal ordinance requiring them to take out a license, where the city is threatening each of them with prosecution for non-compliance and each prosecution would involve the same right claimed by the city.

2. MUNICIPAL CORPORATIONS—*city has no inherent power to license any occupation.* The power of a city to license any occupation must be found in its charter, and must either be expressly granted or be a necessary incident to the carrying out of some power granted.

3. SAME—*what necessary to justify a license ordinance as an exercise of police power.* In order that an ordinance to license a particular occupation, such as the business of plumbing, may be justified as a proper exercise of police power, it must appear that the requirement of a license tends to promote the public health, morals, safety, comfort or welfare, or to suppress disease.

4. PLUMBERS—*city cannot impose additional license fee on plumbers.* The act of 1897, (Laws of 1897, p. 279,) providing for the examination of plumbers and for the granting of a certificate which shall be valid throughout the State, controls the entire subject, and a city cannot require holders of certificates granted under such law to pay an additional license fee imposed by ordinance.

5. SAME—*plumber's "certificate" provided for in act of 1897 is a license.*
The "certificate" provided for in the act of 1897, relating to plumbers, is a license, since it expressly authorizes the recipient to engage in the business of plumbing, which, under the provisions of the act, would be illegal in the absence of such certificate.

*City of Chicago* v. *Wilkie*, 88 Ill. App. 315, reversed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding.

JOHN W. BURDETTE, for appellants.

CHARLES M. WALKER, Corporation Counsel, and WILLIAM HOWARD FITZGERALD, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

William Wilkie and seventy-eight others, as complainants, filed their bill in this case in the circuit court of Cook county against the city of Chicago, appellee, alleging that they were master plumbers engaged in the business of plumbing in the said city, and praying for an injunction against the enforcement of section 1415 of the Revised Code of said city, requiring each master plumber to obtain a license and pay a fee of $30 per year therefor, and section 1421 of such code, imposing a penalty of not less than $50 nor more than $100 for each and every offense of performing any plumbing work without having first obtained such license. The circuit court overruled a general demurrer of the defendant to the said bill and granted the injunction asked for. The defendant was ruled to answer the amended bill within five days, and it was ordered that in the event of failure to answer, the injunction should be made perpetual and the decree stand as a final decree in the cause. The defendant did not answer according to the terms of the order, and the in-

junction became perpetual and the decree final. From that decree the defendant appealed. The appeal was heard in the Branch Appellate Court for the First District, and the decree of the circuit court was reversed and the cause remanded, with a direction to dismiss the bill for want of equity. This appeal is prosecuted from that judgment of the Appellate Court.

The first question raised is whether the circuit court had jurisdiction, as a court of equity, over the subject matter of the bill. That jurisdiction was invoked upon the following facts averred in the bill and admitted by the demurrer: The seventy-nine complainants are master plumbers in the city of Chicago, and sue on behalf of themselves and all others similarly situated. There are in the city of Chicago nine hundred or more master plumbers, whose interests in the questions involved are identical and each of whom is liable to prosecution under the provisions which are alleged to be void. The city has made demands upon complainants to take out licenses under said section, and threatens them with arrest if such licenses are not procured. If they continue to engage in their avocation the city will put its threat into execution and they will be arrested for violation of the ordinance. Each prosecution would involve the same right claimed by the city against each of them. The city would not be civilly liable nor held responsible for damages to complainants. The authorities of the city making arrests are not financially responsible or able to respond in damages. If the master plumbers should pay the license fee and bring suits to recover it, there would be required nine hundred or more suits to recover money illegally obtained. Complainants are threatened with arrest as often as they enter any premises for the purpose of plying their trade, and their business would thereby be practically destroyed.

The mere allegation that an ordinance is illegal will not confer jurisdiction upon a court of equity to restrain

its enforcement, but the averments of the bill bring this case within the rule recognized in *City of Chicago* v. *Collins,* 175 Ill. 445. The complainants are entitled to join in a suit in equity for the purpose of avoiding a multiplicity of suits and having the controversy settled in one hearing.

The conditions upon which the legality of the proposed exaction by the city depends, as alleged in the bill and admitted by the demurrer, are substantially as follows: The Revised Code of the city of Chicago went into effect in April, 1897. The provisions claimed to be invalid, under which the city demands that complainants take out a license and pay a fee of $30 therefor, are as follows:

"Sec. 1415. Any person desiring to engage in or work at the business of plumbing in the city of Chicago as a master plumber shall first obtain a license so to do for each establishment or place of business to be maintained by him, and shall pay for such a license a fee of thirty ($30) dollars per year, said license fee to be paid for during the month of May of each and every year."

"Sec. 1421. No person shall perform any plumbing work without having first obtained the license herein provided for, under penalty of a fine, upon conviction, of not less than fifty ($50) dollars nor more than one hundred ($100) dollars for each and every offense."

Shortly after said Revised Code took effect the legislature passed the following act (Laws of 1897, p. 279):

"An act to provide for the licensing of plumbers and to supervise and inspect plumbing.

"Sec. 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly:* That any person now or hereafter engaging in or working at the business of plumbing in cities or towns of 5000 inhabitants or more, in this State, either as a master plumber or employing plumber or as a journeyman plumber, shall first receive a certificate thereof in accordance with the provisions of this act.

"Sec. 2. Any person desiring to engage in or work at the business of plumbing, either as a master plumber or employing plumber, or as a journeyman plumber, shall make application to a board of examiners hereinafter provided for, and shall, at such time and place as said board may designate, be compelled to pass such examination as to his qualifications, as said board may direct; said examination may be made in whole or in part in writing, and shall be of a practical and elementary character but sufficiently strict to test the qualifications of the applicant.

"Sec. 3. That there shall be in every city, town or village of 10,000 inhabitants or more a board of examiners of plumbers, consisting of three members, one of which shall be the chairman of the board of health, who shall be office (*ex officio*) chairman of said board of examiners; a second member, who shall be a master plumber, and a third member, who shall be a journeyman plumber. Said second and third members shall be appointed by the mayor and approved by the council or by the board of trustees of said town or village within three months after the passage of this act for the term of one year from the first day of May in the year of appointment, and thereafter annually before the first day of May, and shall be paid from the treasury of said city, town or village the same as other officers in such sums as the authorities may designate.

"Sec. 4. Said board of examiners shall, as soon as may be after the appointment, meet and shall then designate the times and places for the examination of all applicants desiring to engage in, or work at, the business of plumbing, within their respective jurisdiction. Said board shall examine said applicants as to their practical knowledge of plumbing, house drainage and plumbing ventilation, and, if satisfied of the competency of such applicants, shall thereupon issue a certificate to such applicant, authorizing him to engage in, or work at, the

business of plumbing, whether as master plumber, or employing plumber, or as a journeyman plumber. The fee for a certificate for a master plumber, or employing plumber, shall be five dollars; for a journeyman plumber it shall be one dollar. Said certificate shall be valid and have force throughout the State, and all fees received for said certificates shall be paid into the treasury of the city, town or village where said certificates are issued.

"Sec. 5. Each city, town or village in this State having a system of water supply or sewerage shall, by ordinance or by-law, within three months of the passage of this act, prescribe rules and regulations for the materials, constructions, alteration and inspection of all plumbing and sewerage placed in, or in connection with, any building in such city, town or village; and the board of health or proper authorities shall further provide that no plumbing work shall be done, except in case of repairing leaks, without a permit being first issued therefor, upon such terms and conditions as such city, town or village shall prescribe.

"Sec. 6. All persons who are required by this act to take examinations and procure a certificate as required by this act shall apply to the board in the city where he resides or to the board nearest his place of residence.

"Sec. 7. Any person violating any provisions of this act shall be deemed guilty of a misdemeanor and be subject to a fine of not less than five dollars ($5.00) nor exceeding fifty dollars ($50.00) for each and every violation therefor, and his certificate may be revoked by the board of health or proper authorities of said city, town or village.

"Sec. 8. All acts and parts of acts inconsistent herewith are hereby repealed."

In pursuance of the provisions of said law, the city of Chicago, on January 31, 1898, passed an ordinance entitled "An ordinance creating a board of examiners of plumbers and providing for the examination and certifi-

cation of plumbers." This ordinance follows and con-
forms to the provisions of said law and creates a board
of examiners, who are required to examine applicants
and issue certificates as provided by said law. The ordi-
nance provides for a secretary at a salary of $1500 per
year, and also for the payment of annual salaries of $1500
each to the plumbers who are members of said board.
It also imposes a penalty of not less than $5 nor more
than $50 upon any person violating, disobeying, neglect-
ing or refusing to comply with the ordinance. There is
a proviso to the ordinance that a certificate issued un-
der it shall not entitle a master plumber or employing
plumber to engage in his business in the city of Chicago
until he has obtained a license under the provisions of
section 1415 of the Revised Code. The mayor appointed
a master plumber and journeyman plumber as members
of the board of examining plumbers, and the board was
organized with said members and commissioner of health
and a secretary. The complainants each received a cer-
tificate as master plumber after an examination by the
board of examiners and each paid into the treasury of
the city a fee provided by said law. The complainants,
by their bill, claim that the proviso in the ordinance that
section 1415 shall remain in force, and that persons hold-
ing certificates from the examining board shall not be
permitted to engage in the work or business of plumbing
in the city of Chicago without an additional license and
the payment of $30 therefor, is null and void.

A city has no inherent power to license any occupa-
tion or to exact a license fee from any person. The power
to do so must be found in its charter, and it must be
either expressly given or be a necessary incident to the
carrying out of a power so granted. The power must be
plainly and unmistakably authorized by the legislature.
In this case, the power to enact sections 1415 and 1421 is
claimed by virtue of clause 66 of section 1 of article 5 of
the act for the incorporation of cities and villages, which

gives the city council power "to regulate the police of the city or village, and pass and enforce all necessary police ordinances," and clause 78 of the same section, which authorizes the council "to do all acts, make all regulations which may be necessary or expedient for the promotion of health or the suppression of disease." If a city council attempts to exercise the powers so conferred, it is, of course, necessary that there should be some substantial relation between the means employed and the end authorized by the charter. An ordinance passed in fulfillment of the objects embraced within the provisions in question must have some tendency to promote the public health, morals, security, comfort and welfare or to suppress disease. So far as this record shows, there was no connection whatever between the ordaining by the city council of sections 1415 and 1421 and the police power or the promotion of health or the suppression of disease. The bill to which the demurrer was interposed sets out the sections already quoted, and they are the only ones before us. The requirement of a license, with the exaction of a license fee, may be a proper and convenient means of regulating the business, but if there was any provision of the ordinance, in connection with the license under section 1415, designed to promote health or suppress disease, or coming within the exercise of the police power, it does not appear. Manifestly, it does not improve the health of the public or suppress disease to collect $30 from a plumber. There is no more relation between the public health and the collection of $30 from a person engaged in plumbing than there would be from a person engaged in any other business or occupation which in no way affects the public health. So far as the record shows, the city has done nothing except make a demand for $30 per year from each plumber, and there is not a trace of regulation for the public health or comfort or suppression of disease in the provision. As a mere exaction of money could not have the slightest tendency

toward the ends contemplated by the clauses of the char-
ter relied upon, the demurrer could not be sustained on
the ground that such exaction was an exercise of the
powers conferred by such clauses. The city has no power
to tax the occupation of plumber, and does not claim to
have such power.

If, however, the city ever had power to exact a license
fee of $30 for the regulation of the business of plumbing,
that power was taken away by the above law, which
went into force July 1, 1897. The power to regulate such
a business and to grant a license therefor resides in the
legislature, which may grant a license directly or confer
the right upon a city. While the legislature may dele-
gate the power to municipalities to grant a license for
a particular occupation and to exact a license fee, they
may, at any time, take away such power or resume the
exercise of it themselves. The legislature may repeal
or amend any provision of the act for the incorpora-
tion of cities and villages at their pleasure, and if the
provisions of the act of 1897 are inconsistent with the
power claimed by the city, they will operate as a repeal
or amendment of the charter to that extent. The law in
question authorizes cities to provide rules and regula-
tions for materials, construction, alterations or inspec-
tion of all plumbing and sewerage for the protection of
the public health, but it provides for a certificate to be
issued by a board of the city to a plumber, "authorizing
him to engage in or work at the business of plumbing,
whether as master plumber or employing plumber or as
a journeyman plumber." The law further provides that
"said certificate shall be valid and have force throughout
the State." By this law the legislature have prescribed
the test which shall enable a person to engage in the
business of plumbing, and the city, by its proviso, has
prescribed another and additional test. The legislature,
by the law, say he is authorized to work at his trade
throughout the State if he has the required certificate.

The city of Chicago, by the proviso to the ordinance passed in pursuance of that law, says that he shall not work at his trade in that city except by paying $30 additional and receiving another license. The city, as a subordinate political authority, cannot interfere with the validity or force of the license issued by its board under the law. That these provisions are inconsistent is plain. The law of 1897 controls the entire subject.

It is insisted that the term "certificate," used in the law, does not mean a license, and therefore the provisions are not inconsistent. The object of the act is to be stated in its title, and one of its purposes is there declared to be the "licensing" of plumbers. The certificate, by express terms, authorizes the recipient to engage in the business of plumbing. A certificate or paper having that effect is a license, which, in its general sense, is an authority to do something which without such authority is prohibited. Webster defines a license to be a formal permission from proper authorities to perform certain acts or carry on a certain business which without such permission would be illegal. The certificate is within that definition and is a license.

Authorities are cited in support of the undoubted rule that the same act may be an offense under a statute and also under an ordinance. But this case does not depend upon that question. The question here is whether the city of Chicago can deny a plumber a right which the statute gives him under the license issued by its examining board. Complainants hold licenses from the city of Chicago authorized by law, which constitute valid authority for doing the very act for which the city proposes to punish them. We think that the circuit court was right in overruling the demurrer.

The judgment of the Appellate Court is reversed and the decree of the circuit court is affirmed.

*Judgment reversed.*