## George J. Kappes, et al., v. The City of Chicago.

### Gen. No. 11,837.

1. INJUNCTION—*when, lies to restrain enforcement of ordinance.* For the purpose of preventing a multiplicity of suits, an injunction lies to restrain the enforcement of an ordinance not previously declared invalid.

2. CITY COUNCIL—*what within power of.* Where a city council has power to pass an ordinance plainly intended to restrict and discourage, as well as to regulate, the sale of a given article—an ordinance forbidding its sale altogether in certain places and to certain persons—it, likewise, has power to add by amendment to that ordinance a simple provision preventing its evasion and practical abrogation.

3. JUDICIAL NOTICE—*of what taken.* The court will take judicial notice that cigarettes are generally made of tobacco rolled within

Kappes v. The City of Chicago.

"small pieces of tissue paper of the size of about 1¾ inches by 3¼ inches."

Bill for injunction.   Appeal from the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge, presiding.   Heard in this court at the October term, 1904.   Affirmed.   Opinion filed March 27, 1905.

**Statement by the Court.**   April 16, 1904, the appellants George J. Kappes and Max Eickelberg, individually and as copartners as Kappes and Eickelberg, "in behalf of themselves and all other similarly situated," filed their bill in chancery in the Superior Court of Cook county to restrain the enforcement of section nine as amended October 28, 1901, of an ordinance of the city of Chicago passed July 6, 1899, entitled, "An Ordinance concerning Cigarettes." The bill, after amendment, in addition to its formal recitals, etc., sets out in full the ordinance of July 6, 1899, which provided for licenses by the mayor of Chicago authorizing the sale of cigarettes by such persons as might obtain such licenses on giving a certain bond and paying $100 per annum.   It is provided in this ordinance that no person shall sell any cigarette containing certain substances other than tobacco, mentioned and declared deleterious; that no cigarette of any kind shall be sold to a minor, and no license shall be granted for their sale within 200 feet of a school house.   Penalties are provided for sale of cigarettes to a minor, or of cigarettes containing the deleterious substances mentioned to any one; and Section 9 of the ordinance as originally passed is as follows:

"Section 9.   Any person who shall hereafter have or keep for sale or expose for sale, or offer to sell, any cigarettes at any place within the City of Chicago without having first procured the license, as above provided, shall be fined not less than twenty-five dollars and not exceeding two hundred dollars for every violation of this ordinance, and a further penalty of twenty-five dollars for each and every day the person, firm or corporation persists in such violation after a conviction for the first offense."

The bill, after thus reciting the ordinance passed on July

6, 1899, alleges that on October 28, 1901, the city council
of Chicago amended said section 9 so as to make it read as
follows:

"Section 9.    Any person who shall hereafter keep for sale
or to give away, or shall sell or give away, or offer to sell or
give away, any cigarettes or any cigarette papers or cigarette
wrappers of any kind, at any place within the City of Chi-
cago, without having first procured the license, as above pro-
vided, shall be fined not less than twenty-five ($25) dollars
and not exceeding two hundred ($200) dollars for every
violation of this ordinance; and a further penalty of twenty-
five ($25) dollars for each and every day such person per-
sists in such violation after a conviction for the first offense."

Further, the bill alleges that complainants are retail cigar
and tobacco dealers, and that in that business it becomes
necessary to give away to all persons who desire them small
packages of papers known as cigarette papers; and that com-
plainants keep on hand such papers for the purpose of giving
away and to give away.    Further, it is alleged that in giv-
ing away cigarette papers, there is nothing harmful to the
public health or otherwise unlawful or injurious; that by
giving them away, the complainants "satisfy the desires of
certain of their customers," and make large profits from sales
made to such customers of other goods, and that if complain-
ants are prevented from giving away such cigarette papers,
they will lose a large number of customers and consequent
profits.    The bill also asserts that there are nine hundred or
more persons similarly situated with complainants; that
complainants are threatened with arrest and punishment by
the city authorities if they violate said ordinance as amended,
and that the ordinance is unconstitutional, illegal and void.

Further complainants represent "that they would not com-
plain of reasonable and proper restrictions that the city might
impose in connection with the giving away or keeping for
sale of cigarette papers," but that "the imposing of a license
fee of $100" upon said business is unreasonable; that the
amount is so large that it is unprofitable and impracticable
for the complainants and the nine hundred or more other

persons who are similarly situated in the city of Chicago to pay it, and that if compelled to do it, they "will be unable to conduct said business of keeping for sale or giving away cigarette papers."

It is alleged that by the amended ordinance the city of Chicago has discriminated between the complainants and persons similarly situated on the one hand, and those who shall have taken out a license for the sale of cigarettes and complied with the provisions of the ordinance concerning the sale of cigarettes on the other; that the license issued to such persons who have complied with the ordinance for the sale of cigarettes does not give permission to such persons to keep for sale or give away cigarette papers, but that such persons are allowed by the city to do so.

Allegations are also made that in default of an injunction, complainants will be harassed by a multiplicity of suits and arrests, and will have no remedy against the city of Chicago for the false arrests and imprisonments they may be subjected to, or for the expense they may be put to, and that the agents of the city would probably be irresponsible persons, so that complainants would suffer irreparable loss; that for complainants and their nine hundred fellow tobacco dealers to pay the license fee demanded under protest and sue to recover it, would likewise bring about a multiplicity of suits and be a great hardship.  For these reasons the bill prays that the city of Chicago and its agents may be restrained from arresting the complainants or any other persons similarly situated, or enforcing "the different sections of the ordinance as far as the same relate to the keeping for sale or giving away of cigarette papers or wrappers."

To this bill the city of Chicago filed a general demurrer. On argument the chancellor in the Superior Court sustained the demurrer and dismissed the bill.  From this decree the complainants (appellants here) took an appeal, and in this court have assigned as error the sustaining of the demurrer and the dismissal of the bill.

GEORGE J. KAPPES, for appellants.

WILLIAM D. BARGE, for appellee; EDGAR BRONSON TOLMAN, of counsel.

MR. JUSTICE BROWN delivered the opinion of the court.

It is objected by the 'appellee to the consideration of the substantive merits of the appellants' contentions, that a bill will not lie "to enjoin the enforcement of an ordinance that has not as yet been held to be invalid." We could not sustain this objection without ignoring the plain language of the Supreme Court in City of Chicago v. Collins, 175 Ill. 445, and Wilkie v. Chicago, 188 Ill. 444. Counsel for appellee seek to distinguish these cases from the one at bar by saying that in them there were enough complainants to show on the face of the bill that they were representatives of the class for which they sued, while in the case at bar there are but two complainants out of nine hundred similarly situated. But in the Collins case the court says: "The enforcement of a void city ordinance may be enjoined in order to prevent a multiplicity of suits at the instance of any person whose interests are impaired by it," and quotes Pomeroy as saying that such a case might be brought by one of such persons suing on behalf of the others, or even by one person suing for himself alone. In Wilkie v. The City of Chicago, 188 Ill. 444, the Collins case was followed, and except that seventy-nine complainants out of nine hundred persons similarly situated, joined in the bill, whereas in the present case but two out of nine hundred are suing, the Wilkie case and the one at bar are identical on the question of jurisdiction. We cannot see that the principle is changed by the difference noted, and consider that the jurisdiction of equity in this case has been settled by these decisions of the Supreme Court.

The scope of our duty in the investigation of the substantive merits of the cause is much narrowed by the fact that the original ordinance, to enjoin the enforcement of an amended section of which this action was brought, has been passed on and sustained in elaborate opinions of the two courts of binding authority with us—the Supreme Court of Illinois, and the Supreme Court of the United States.

Kappes v. The City of Chicago.

In the case of Gundling v. The City of Chicago, 176 Ill. 340, the Supreme Court of Illinois upheld the ordinance and placed its decision squarely on the police power given to the city by paragraph 66 of section 1 of the City and Village Act, and on the power given by paragraph 78 to make all regulations necessary or expedient for the promotion of health. "It being well known," says the court, "that young persons of weak and immature minds are more liable to use tobacco in the form of cigarettes than in any other form, a legislative body may properly provide for the regulation and sale of that article in the form in which it is likely to be the most deleterious and injurious, and may restrict the sales of that particular form of tobacco." "An ordinance of this character is not in conflict with any principle of the common law or with any public or general statute and infringes no private right not necessarily infringed in the interests of good government. It subserves the public welfare, protects the health of the community and is included within the express powers granted the City Council." The defendants, convicted of a violation of the ordinance, having taken the case on a writ of error to the Supreme Court of the United States, that court also upheld the ordinance, declaring that as to the power of the city council to pass the ordinance, the decision of the Supreme Court of Illinois was conclusive, and that the ordinance did not violate the rights guaranteed by the Fourteenth Amendment to the Constitution of the United States, either in regard to due process of law or to the equal protection of the laws. It says, "Whether dealing in and selling cigarettes is that kind of business which ought to be licensed is, we think, considering the character of the article to be sold, a question for the State and through it for the City to determine for itself." As stated in Crowley v. Christensen, 137 U. S. 86, "the possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed by the governing authority of the country essential to the safety, health, peace, good order and morals of the community." "It is not a valid objection to the ordinance that it partakes of both the character of a regu-

lation and also that of an excise or privilege tax. The business is more easily subjected to the operation of the power to regulate where a license is imposed for following the same, while the revenue obtained on account of the license is none the less legal because the ordinance which authorized it fulfills the two functions, one a regulating and the other a revenue function."

It will thus be seen that the only question before us is this: has a city council which had power to pass an ordinance plainly intended to restrict and discourage as well as to regulate the sale of a given article—an ordinance forbidding its sale altogether in certain places and to certain persons—power also to add by amendment to that ordinance a simple provision preventing its evasion and practical abrogation? To state the question in this form seems to us to answer it, and to render unnecessary the discussion of cases cited by the counsel for appellants where the facts and conditions were very different.

We think the court may take judicial notice that cigarettes are generally made of tobacco rolled within "small pieces of tissue paper of the size of about one and three-fourths inches by three and one-fourth inches," such as it is said in their bill the appellants keep on hand for the purpose of giving away in connection with their business of selling tobacco at retail, and that it is a very simple thing, requiring neither any considerable amount of time or skill nor any mechanical appliance or tool to make the combination of the paper and tobacco, and thus manufacture a cigarette. The purpose of the original ordinance was to regulate and restrict and partially prohibit the use of tobacco in the form of cigarettes. It was upheld as a police regulation on the ground that weak and immature persons injured their health by such use. It would be a halting jurisprudence which could find that such an ordinance was legal and valid, but that the body enacting it had no power to prevent retail dealers of tobacco who had and needed no license for their business, from selling freely to minors as well as to all others the tobacco prepared for cigarettes and then giving away to the

purchasers the prepared cigarette papers in which to envelope it. But if the council has power to prevent this, it had necessarily the power to pass the amendment to section 9 complained of, the purpose and effect of which is simply to subject to the same regulations and license fee those who sell the finished cigarette and those who sell the two materials which a twirl of the fingers can combine and make a finished cigarette.

It would certainly be strange to hold that a restrictive regulation for the sale of tobacco pipes was valid, but that an amendment to it forbidding, except on the same conditions, the sale of pipe bowls with the gift of amber pipe stems, was beyond the power of the legislative body enacting the original restriction. But it would be no more strange than to sustain the contention of appellants in the present case.

The decree of the chancellor in the Superior Court is affirmed.

*Affirmed.*