## STATE v. NATHAN GOTTSTEIN.[1]

November 10, 1939.

No. 32,159.

*Leonard, Street & Deinard* and *Arnold A. Karlins,* for appellant.

*R. S. Wiggin,* City Attorney, and *Leo P. McHale,* Assistant City Attorney, for the State.

[1]Reported in 288 N. W. 221.

HOLT, JUSTICE.

Defendant was convicted of violating this provision of the plumbing ordinance of the city of Minneapolis enacted June 11, 1909, as amended April 23, 1937:

"Section 2. No person or persons shall hereafter construct, extend, alter or repair any plumbing work or house drainage, or construct cesspools, or construct or connect any house drainage with cesspools or the sewer system of the City of Minneapolis, until after he or they shall have first obtained a license from the City Council to do such work."

The complaint under which defendant was prosecuted charged that he, on April 27, 1938, did wilfully, wrongfully, and unlawfully repair the house drainage connected with the sewer system of the city, of 3416 Sixteenth avenue south, in the city of Minneapolis by inserting in said house drainage system an electrical device to clean pipes and remove vegetable accretions, grease and lime accumulation, and foreign matters, the device consisting of a revolving motor-driven steel cable, powered by an electric motor, at the end of which two roto blades are attached, and did cause said instrument to be inserted in the house drainage system of the said building, and did clean and repair the house drainage system without first having obtained a license from the city council so to do, contrary to the ordinance of the city passed June 11, 1909, and amended April 23, 1937.

Defendant had obtained no license under this ordinance, that is, a plumber's license. The proof shows that he was engaged on the day mentioned in cutting out and removing the roots from trees and shrubs that had gained entrance into the house sewer of the building mentioned and clogged or obstructed the flow of sewage therefrom into the city sewers. The ordinance defines the "house sewer" as that part of the sewage system of a building which begins three feet outside its walls and extends to and discharges into the city sewer. Defendant was doing this work of cutting and removing the roots with an instrument called a

Roto-Rooter. The device and its operation are accurately described by defendant's counsel thus:

"* * * cutting knives attached to the fore end of a revolving steel cable, powered by an electric motor, the cable being fed from a spool or wheel resting on an iron chassis. * * * The spool ordinarily carries about 120 feet of cable which is made of tempered spring steel and flexible. There are three sets of knives, two inches, four inches, and six inches in diameter respectively. The cutting edges of the knives are so arranged that when the cable revolves they cut and dislodge roots and other obstructions which find their way into the house drainage and house sewage systems of many homes. The cable and knives are inserted in one of the basement cleanouts in the drainage system and fed into the house drain, and through the house sewer until the main city sewer is reached, generally in the middle of the street. The knives are one-sixteenth of an inch thick, are made of spring steel and are flexible. The small knife makes an opening so that drainage is secured, the larger two sets of knives are then used to complete the job of dislodging all roots and other obstruction in the drainage system."

The proof showed that defendant removed the clean-out cap or cover in the basement, inserted his Roto-Rooter, and cut and removed the roots that had clogged the house sewer in question. There is no complaint that the obstruction was not efficiently removed or that the clean-out cap or cover was not properly replaced. It clearly appears that the position of the tiles in the house sewer was not disturbed, nor were any alterations or additions made in the structure of the tiles. Defendant had not obtained nor applied for a plumber's license under the ordinance. He was found guilty and fined. His motion for a new trial was denied, and he appeals from the conviction.

There are several assignments of error, one being that the conviction is not sustained and is contrary to the law and the evidence. We think the case should be disposed of upon that assignment alone. The work which defendant did on the occasion in

question is not claimed to have been a construction, extension, or alteration of any plumbing or house drainage system prohibited by the ordinance unless done by a licensed plumber. But it is contended that it comes within the meaning of the word "repair" in the ordinance. It is well known that in every house plumbing and sewage system there are cleanouts provided where by the use of an ordinary wrench the cap or cover may be removed and entrance made to remove or clean out obstructions. Often a simple contrivance used by one not a licensed plumber may remove the clogging matter. Nothing in the system is out of order or in need of repair. Nothing need be done to the tile or pipe in which the obstruction is found other than remove the same, that is, clean the pipe or tile. The city attorney cites and relies on language used in City of Duluth v. Duluth St. Ry. Co. 172 Minn. 187, 215 N. W. 69, where the company occupied a street with its track under a franchise providing (§ 10) that the "company shall keep the space between the rails in proper repair so as not to interfere with travel over the same" and where this court, in determining the meaning of the word "repair" had to give consideration to another provision (§ 6) in the same franchise and there said [172 Minn. 190, 215 N. W. 70]:

"The requirement of § 10 to keep in proper repair can be construed so as to be entirely consistent with § 6 by the simple expedient of giving to 'repair' its ordinary meaning of making good defects, however caused, by something short of replacement or reconstruction."

Cutting off and removing the roots inside the tile did not make good any defects in the tile itself. The case of State v. McGuire, 109 Minn. 88, 122 N. W. 1120, also cited, holds that under the existing ditch law the deepening and widening of an established ditch could not be said merely to repair the ditch, and hence there must be notice and a chance to be heard before lands affected could be assessed for benefits. The later case of In re Improvement and Repair of Judicial Ditch No. 10, 171 Minn. 478, 214 N. W. 285, under an amended statute, also referred to, is no aid

as to the meaning of "repair" in the ordinance in question. If the Roto-Rooter be an improper instrument for removing roots clogging house sewers, in that when the tile is displaced the device is apt to pierce the tile and bore a hole that may reach the surface, no doubt the city council may make its unlicensed use an offense, but so far that has not been done. In fact, the evidence shows that at times the licensed plumber engages defendant to do the work he was doing at 3416 Sixteenth avenue south.

Having reached the conclusion that the city ordinance under which defendant was prosecuted cannot be construed as prohibiting anyone but a licensed plumber to free a house sewer from roots obstructing the flow of sewage through it, there is no occasion to consider other assignments of error.

The conviction is reversed.