ROBERT W. OPPELT *v.* GLENDON R. MAYO, DIRECTOR OF LICENSES AND INSPECTIONS OF THE CITY OF HARTFORD

SUPERIOR COURT  HARTFORD COUNTY  FILE NO. 146816

Memorandum filed September 7, 1966

*Milton Sorokin* and *Ethel S. Sorokin,* of Hartford, for the plaintiff.

*Richard M. Cosgrove,* corporation counsel, for the defendant.

*Harold M. Mulvey,* attorney general, and *F. Michael Ahern,* assistant attorney general, as amici curiae.

[1] *Bordon, J.,* in *Capitol Fuel Co.* v. *New York Casualty Co.,* 16 Conn. Sup. 155, 158.

RADIN, J. The instant matter is in the nature of a mandamus, ordering the defendant as director of the department of licenses and inspections for the city of Hartford to issue to the plaintiff a plumbing permit in accordance with the provisions of Public Acts 1965, No. 493 (General Statutes, c. 393).

The parties presented this matter to the court on a stipulation of facts. It presents a very narrow issue of law involving the interpretation of Public Act No. 493, which act, entitled "An Act concerning State Boards for Occupational Licensing," provides for the licensing of specific occupations—in this case, plumbing. The defendant claims that Public Act No. 493 is invalid because it is indefinite, vague and inconsistent in its terms.

Throughout the year 1965 the plaintiff held a Hartford master plumber's license, No. 47041, issued by the defendant and was a licensed plumber in good standing. On September 14, 1965, the plaintiff applied for a state of Connecticut plumbing examination board classification of contractor-plumber under the authority of Public Act No. 493. The state of Connecticut plumbing examination board issued a license to the plaintiff, effective to October 1, 1967. The plaintiff, in reliance upon his state of Connecticut plumbing license issued under Public Act No. 493, had not renewed his Hartford plumbing license. On May 10, 1966, while still licensed by the state of Connecticut, the plaintiff filed an application for a plumbing permit to do certain work in Hartford. The permit application was properly executed and submitted with the required fee of $2.50 to the department of licenses and inspections of the city of Hartford. The defendant, Mayo, disapproved the plaintiff's permit application on the ground that the city of Hartford does not recognize state licenses and, further, that the license of the plaintiff which

he had held with the city of Hartford had not been renewed.

It is too well known to require any discussion that the right to engage in any lawful occupation may be qualified or restricted under the police power of the state. Where the public interest may be adversely or injuriously affected by incompetent or unreliable persons engaging in a particular occupation, the state may require one who intends to engage in such occupation to exhibit his qualifications and obtain a license attesting to his skill and character. By the great weight of authority, plumbing is such an occupation. 41 Am. Jur., Plumbers, Electricians and Other Artisans, § 2.

The problem presented is one of statutory construction, involving consideration of the language of the act and the circumstances and conditions which may be deemed to have affected the legislative intent and motivated its adoption. In seeking to ascertain the legislative intent, we may look to the history of the statute and the policy underlying it. *Lee* v. *Lee,* 145 Conn. 355, 358. The General Statutes themselves provide in § 1-1: "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; . . . ." "In seeking to ascertain the legislative intent, we may look to the history of the statute and the policy underlying it." *State* v. *Cambria,* 137 Conn. 604, 606. Legislative intent is to be found not in what the legislature meant to say but in the meaning of what it did say. *Mad River Co.* v. *Wolcott,* 137 Conn. 680, 686. We are called upon to look beyond the literal meaning of the words to the history of the law, its language, considered in all its parts, the mischief the law was designed to remedy, and the policy underlying it. *Giammattei* v. *Egan,* 135 Conn. 666, 668.

The power to regulate such a business and to grant a license therefor resides in the legislature, which may grant a license directly or confer the right upon a city. *Wilkie* v. *Chicago,* 188 Ill. 444. The important purpose of Public Act No. 493 was to furnish a uniform and understandable method of issuing licenses to do plumbing work. Those who drafted and enacted Public Act No. 493 were seeking a statewide system for qualifying plumbers, so that in our complex and expanded economy there would be a uniformity. A reading of Public Act No. 493 clearly indicates that the legislature sought to establish state boards to regulate and license specific occupations—in this case, plumbers.

The act clearly expresses the intention of the legislature as follows: "Sec. 3 [General Statutes § 20-332]. . . . [R]ules and regulations shall first be promulgated not later than December 31, 1966, and shall become effective July 1, 1967. . . . Sec. 5 [General Statutes § 20-334]. No person shall, after October 1, 1966, engage in or practice the work of any occupation covered by this act in this state unless he has first obtained a certificate of registration . . . ." Section 10 (General Statutes § 20-341) prescribes as a penalty for anyone "who, after October 1, 1966, engages in or practices the work or occupation for which a license is required by this act without having first obtained a certificate of registration for such work" a fine of "not more than one hundred dollars for each such violation." Section 11 (General Statutes § 20-339) goes on to say: "Any person licensed under this act shall be permitted to perform the work or occupation covered by such license in any town or municipality of this state without further examination or licensing by any town or municipality."

Public Act No. 493 clearly indicates that the legislature contemplated the issuance of state

licenses immediately after the effective date of the act (July 1, 1965) and prior to the mandatory date (October 1, 1966). If the General Assembly had intended that the act should be effective July 1, 1967, there would be no reason or necessity for § 11 of Public Act No. 493.[1] It is, therefore, obvious that the General Assembly intended by § 11 of Public Act No. 493 that the effective date be July 1, 1965, and this section is a clear statutory direction permitting the plaintiff to operate under his state permit within ninety days from the effective date of this act. It must be concluded that nothing remains to be done but the purely ministerial act of issuing the formal permit. *State ex rel. Heimov* v. *Thomson,* 131 Conn. 8, 13.

The application for the immediate issuance of an order of mandamus is granted, directing the defendant, Glendon R. Mayo, director of licenses and inspections, to issue to the plaintiff, Robert W. Oppelt, his application for a permit to do plumbing work at 158 Wooster Street, first floor right, Hartford, Connecticut.

---

[1] "Sec. 11 [General Statutes § 20-339]. Any person engaged in the practice of any work or occupation for which a license is required under this act who is licensed by any municipality of this state to engage in such work or occupation on the effective date of this act shall be deemed to have complied with the provisions of this act, and shall be issued a certificate of registration license by the appropriate examining board upon application accompanied by evidence of compliance with the requirements of this act, received by said board within ninety days from the effective date of this act. Any person licensed under this act shall be permitted to perform the work or occupation covered by such license in any town or municipality of this state without further examination or licensing by any town or municipality."