[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs, Roto Rooter Services Co. ("Roto Rooter"), Alexander Gitelman and Andre Grigoryn, appeal from January 17, 2002 final decisions of the state plumbing and piping work examining board ("the board"), issuing disciplinary orders and fines against the plaintiffs for performing plumbing work without a license. This appeal is taken pursuant to General Statutes §§ 21a-7 (1) and 4-183 of the Uniform Administrative Procedure Act ("UAPA").
The record indicates that on November 3, 2000, the board issued administrative complaints to the plaintiffs claiming that the plaintiffs had performed plumbing and piping work without a license in violation of General Statutes §§ 20-334, 20-337 and 30-341. (Return of Record ("ROR"), Items 2, 5 and 8.) A statutorily mandated hearing was held on December 20, 2001 before the board. The evidence in the record reflects that Gitelman and Grigoryn were employees of Roto Rooter. In September of 1997, Roto Rooter sent Gitelman and Grigoryn on a service call to clear a toilet drain at a home in Meriden, Connecticut. In the course of that work, the plaintiffs, who were not licensed plumbers, removed the toilet and then subsequently replaced it.[1] This operation consisted of draining the toilet of water, disconnecting and subsequently reconnecting supply lines and bolts, closing and then opening supply values, changing the wax gasket around the toilet, and when reseated, testing the toilet for leaks. (ROR, Item 19, Transcript, pp. 16, 19-21, 25, 36-37, 43, 50.)
The board concluded on January 17, 2002, that Roto Rooter had authorized plumbing work by unlicensed personnel and that Gitelman and Grigoryn had performed this work, all in violation of General Statutes §§ 20-334, 20-337, and 20-341. Roto Rooter was ordered immediately to discontinue from permitting unlicensed and/or unregistered employees from performing such plumbing work and was fined $3500.[2] Gitelman and Grigoryn were ordered to discontinue performing such plumbing work and CT Page 13778 were fined $500 each. (ROR, Items 13, 15, 17.) The plaintiffs have appealed from these final decisions.[3]
Under the UAPA, General Statutes § 4-183 (j), the court must review the claims of the plaintiff under the following test:
 Judicial review of an administrative agency's action is governed by the Uniform Administrative Procedure Act . . . and the scope of that review is very restricted. . . . With regard to questions of fact, it is [not] the function of the trial court . . . to retry the case or to substitute its judgment for that of the administrative agency. . . .
 Even as to questions of law, the court's ultimate duty is only to decide whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . .
 Moreover, an agency's interpretation of its own regulations is entitled to deference. . . . When an agency has expertise in a given area and a history of determining factual and legal questions similar to those at issue, its interpretation is granted deference by the courts.
(Brackets omitted; citations omitted; internal quotation marks omitted.) MacDermid, Inc. v. Dept. of Environmental Protection,257 Conn. 128, 136-39 (2001).
The plaintiffs first claim that the board erred in concluding that their actions constituted "plumbing and piping work" as defined in General Statutes § 20-330 (3)[4] This claim must be resolved through statutory interpretation. "The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding CT Page 13779 its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Moreover our rules of statutory construction apply to administrative regulations . . . (Brackets omitted; citations omitted; internal quotation marks.) AndersonConsulting, LLP v. Gavin, 255 Conn. 498, 512 (2001). ""In construing a statute, common sense must be used, and courts will assume that the legislature intended to accomplish a reasonable and rational result. . . .King v. Board of Education, 203 Conn. 324, 332-33, 524 A.2d 1131
(1987)." Regency Savings Bank v. Westmark Partners, 70 Conn. App. 341,345 (2002).
Looking to the term "installation" as used in § 20-330 (3), in relation to "water systems for human usage" and "sewage treatment facilities," the court concludes that the statutory definition of plumbing and piping work is broad enough to cover the removal and reseating of a toilet. According to Webster's Third New International Dictionary, "installation" is "something that is [installed] for use." The example given is "admired the new plumbing installation." The word "install" is defined as "to set up for use or service," and is followed by the example, "the electrician installed the new fixtures." The term "install" also includes the act of "re-installing." Wroblewski v. GrandTrunk Western Railway Co., 276 N.E.2d 567, 574 (Ind.App. 1971). The common usage of "install" means simply to "put in place," and the term does not imply any "special degree of permanence." Crystal ApartmentsGroup v. Cook, 558 N.Y.S.2d 786 (Civ.Ct. 1990).
The action here may be distinguished from the mere use of the "roto-rooter" tool, which, when used to clear a drain, has been held not to be plumbing. For example, in State v. Gottstein, 288 N.W. 221 (Minn. 1939), a city plumbing ordinance prohibited the altering or repairing of a house drainage system by a person not holding a plumbing license. Gottstein, who was unlicensed, was convicted for inserting a "roto-rooter" device into drainage pipes. "[D]efendant removed the clean-out cap or cover in the basement, inserted his Roto-Rooter, and cut and removed the roots that had clogged the house sewer in question. There is no complaint that the obstruction was not efficiently removed or that the clean-out cap or cover was not properly replaced. It clearly appears that the position of the tiles in the house sewer was not disturbed, nor were any alterations or additions made in the structure of the tiles." Id., 222.
The court reversed Gottstein's conviction as "the city ordinance under which defendant was prosecuted cannot be construed as prohibiting anyone but a licensed plumber to free a house sewer from roots obstructing the CT Page 13780 flow of sewage through it . . . Id., 223; see also Rochester v.Sciberras, 56 App.Div.2d 726 (N.Y.App.Div. 4th Dept. 1977) (ordinance does not require a plumber's license for the use of a "roto-rooter" to maintain sewerage system).
Here, by contrast, the plaintiffs workers are proceeding well beyond using the "roto-rooter" tool to clear a drain, nor are they merely lifting off a "cap or cover" and then replacing it. Their actions call for an initial disconnection of the toilet and then a complete reinstallation. The court's conclusion, in finding that the definition covers such activity, is no different from the result reached in BobRosen Water Conditioning Co. v. Bismarck, 181 N.W.2d 722 (N.D. 1970), where a plaintiff sought a declaratory judgment to determine whether he was required to obtain a plumbing license to install and service water softeners. The North Dakota Supreme Court held as follows:
 No doubt it is true that persons who are specially trained to install water softeners are as capable of protecting the public health and welfare in the installation of such equipment as are those who are trained plumbers. However, the term "plumbing," as defined by the Legislature, includes the installation of water softeners since the definition includes not only the installation of pipes, fixtures, and other facilitating apparatus for bringing water into buildings and for removing liquids and water-carried wastes, but also the installation of pipes and fixtures for the use of water in buildings. This clearly would include the installation of water softeners. We therefore hold that the word "plumbing," as defined by our law, requires the installation of water softeners and the pipes necessary for their operation to be done by licensed plumbers.
Id., 726.
In addition, the references to legislative history cited by the plaintiffs do not support their argument that their actions do not constitute "plumbing" under § 20-330 (3). In 1974, the General Assembly already had enacted the definition of "plumbing" and turned to a proposal to establish a separate licensing requirement for persons installing and maintaining subsurface sewage disposal systems. It is true, as the plaintiffs contend, that the proposal as drafted was criticized by Representative Ajello and others as requiring even a ditch-digger to become licensed. 17 HR. Proc., Pt. 10, 1974 Sess., p. CT Page 13781 4557. Nonetheless, there was no dispute among the senators or representatives that an installer of a subsurface sewage disposal system would have had to obtain a license under § 20-330 (3) before the enactment of the proposed legislation.[5] See 17 S. Proc., Pt. 3, 1974 Sess., p. 2605, remarks of Senator Strada; 17 HR. Proc., Pt. 10, 1974 Sess., pp. 4563-64, remarks of Representative Demerell.
The plaintiffs also incorrectly rely on § 20-332-1 (j) of the Regulations of Connecticut State Agencies to justify their position. This regulation provides as follows:
 "Plumbing and piping maintenance" means the keeping in a state of repair or efficiency all types or classes of plumbing and piping equipment. The replacement of existing equipment with equivalent materials, or materials substantially equal to existing materials if identical equipment is not available, but excluding any alteration or additional work adversely affecting safety, or change in original design. Change of original function or design is permitted as maintenance only where the existing equipment or system is in a dangerous condition and not in compliance with the present code provisions, provided that the maintenance performed will render the system or equipment safe and in compliance with applicable code provisions. Excluded from the definition of plumbing and piping maintenance is the removal and/or replacement of a vital element of gas, water, or soil pipes, cisterns, tanks, [baths], shower stalls, interior drains connected to soil pipes, water closets and fittings appurtenant thereto, or any sanitary or fire protection apparatus, except the closing of valves to cut off a supply if a dangerous condition exists and the cutting off would render the condition safe, and the removal or rendering safe of equipment in a dangerous condition.
This regulation was issued in 1968, a year after the statutory definition of "plumbing" and "piping work" in § 20-330 (3) was passed by the General Assembly. Relying on the regulation, the plaintiffs argue that the regulation was issued to modify the word "maintenance" as used in § 20-330 (3) to exclude such "maintenance" when "water closets" are "removed."
The court follows the board's parsing of this regulation; however, its CT Page 13782 language does not mean that removal of a "water closet" is no longer "maintenance." The regulation's purpose, rather, is to grant specific licensees in the plumbing trade[6] the right to make repairs byallowing certain activities to be "plumbing maintenance." The regulation also adds limiting language to this grant to insure that these licensees cannot claim the right to make repairs to a "vital element" of a plumbing system, including water closet removal, in the name of "plumbing maintenance." This interpretation of the regulation ends any conflict with the statute and reaches a reasonable and rational result — the aim of all statutory interpretation. Vibert v. Board of Education,260 Conn. 167, 177 (2002).
The plaintiffs further argue that the board's decision that removal and replacement of a toilet is "plumbing" has not been made before and therefore the court may not give deference to the board's statutory interpretation. In the so-called "Home Depot" decision in 1993, the board concluded that the removal and replacement of a toilet during the installation of new flooring did constitute plumbing under § 20-330
(3). The Home Depot decision is sufficiently similar to the present case[7] and indicates that the board has generally considered the matter before. Therefore, deference should be given to the board's decision. MacDermid, Inc. v. Dept. of Environmental Protection, supra, 257 Conn. 139.
The plaintiffs also try to undercut the board's decision by contending that the board's decision will lead to a requirement not only that a license be obtained by the individual plaintiffs, but also that a permit would be required in each instance by the International Plumbing Code § 106.1.[8] It is claimed by the plaintiffs that imposing a permit requirement on every drain cleaning is an illogical result. The answer to this is that the International Plumbing Code exempts from the permit requirement "[t]he removal and reinstallation of water closets. . . ." International Plumbing Code § 106.2(2). Thus, there is nothing illogical in the board's imposing a licensing requirement on the individual plaintiffs, but at the same time not expecting a permit to be imposed under the International Plumbing Code.
The plaintiffs' next claim that the board's regulation violates equal protection because there is no showing that its ruling will be imposed on other similarly-situated companies. The plaintiffs have misstated their burden of proof. They must demonstrate that the board has singled them out with a discriminatory motive before this claim may succeed. See Statev. Delossantos, 211 Conn. 258, 287, cert. denied, 493 U.S. 866,110 S.Ct. 188, 107 L.Ed.2d 142 (1989). The record does not support this claim. CT Page 13783
With regard to due process, the plaintiffs first argue that the application of the statute to their activities should be rejected under the vagueness doctrine. There is nothing here, however, that is vague. The board has specifically interpreted the word "plumbing" in § 20-330
(3) to include the plaintiffs' actions in removing and replacing a toilet. The board had previously concluded that the "Home Depot" installers were engaged in plumbing when they removed a toilet. The plaintiffs failed to prove that they had inadequate notice of what was prohibited or that they were the victims of arbitrary and discriminatory enforcement. Connecticut Building Wrecking Co. v. Carothers, 218 Conn. 580,591 (1991); Packer v. Board of Education, 246 Conn. 89, 109 (1998).
The second due process claim made is that the plaintiffs' livelihood is being unfairly deprived. The state may, however, under its police power enforce licensing laws to protect public health and safety. See Oppeltv. Mayo, 26 Conn. Sup. 329, 331 (1966): "It is too well known to require any discussion that the right to engage in any lawful occupation may be qualified or restricted under the police power of the state. Where the public interest may be adversely or injuriously affected by incompetent or unreliable persons engaging in a particular occupation, the state may require one who intends to engage in such occupation to exhibit his qualifications and obtain a license attesting to his skill and character. By the great weight of authority, plumbing is such an occupation."
Similar statements may be found in other cases to consider the requirement of a plumbing license. In Bob Rosen Water Conditioning Co.v. Bismarck, supra, 181 N.W.2d 725, the court recognized that an "attempt to extend the authority of the police power of the State to the replacement of a faucet would make the plumbing law, when so applied, unreasonable and arbitrary. To avoid infringement of constitutional rights, the exercise of the police power must be limited to those acts which may be reasonably construed as expedient and necessary for the protection of public health, public safety, public morals, or public welfare." Here, the court concluded that there was a safety issue with the improper installation of water softeners. See also People ex rel.Lumpkin v. Cassidy, 703 N.E.2d 1, 5 (Ill. 1998) (constitutionality of requiring licensed plumber for installation of lawn sprinkler system).
As regards the attempted regulatory action in this case, our Supreme Court has stated that § 20-330 (3) is part of a system of licensing designed to protect the public health and should be afforded a liberal construction. Hartford Hospital v. Department of Consumer Protection,243 Conn. 709, 719-20 (1998). The record indicates that a mistaken CT Page 13784 removal and replacement of the toilet might cause property damage related to flooding or sanitation. That is why the installer tests to make sure there are no leaks. (ROR, Item 19, p. 16.)[9] "Proper sanitation is a matter of public concern and is related to public health and welfare."Bob Rosen Water Conditioning Co. v. Bismarck, supra, 181 N.W.2d 725. The corporate plaintiff has a training program for unlicensed technicians, (ROR, Item 19, p. 12), but the state may decide that its own licensing specifications should govern, not the company's. Under these circumstances, there is no violation of due process.
The board's decision was not unreasonable, arbitrary, illegal or an abuse of discretion. Therefore, the plaintiffs' appeal is dismissed.
 ___________________ Henry S. Cohn, Judge